**UNITED STATES of America,
Plaintiff-Appellants,**

v.

**John E. McKENZIE, Dale Bonura, Stephen Farrar, Stephen Reboul, Ronald F. Brink, Thomas R. Woodall and Richard LeBlanc, Defendants-Appellees.**

**No. 81–3551.**

United States Court of Appeals,
Fifth Circuit.

June 18, 1982.

Rehearing and Rehearing En Banc Denied Aug. 30, 1982.

John P. Volz, U. S. Atty., Morris Reed, Asst. U. S. Atty., New Orleans, La., Michael Johnson, Mark L. Gross, William Bradford Reynolds, Walter W. Barnett, Attys., Daniel F. Rinzel, Crim. Section, Civil Rights Division, Dept. of Justice, Washington, D. C., for plaintiffs-appellants.

Ralph Capitelli, New Orleans, La., for McKenzie.

Ralph S. Whalen, New Orleans, La., for Bonura, Farrar, Reboul and Brink.

Wally Rothschild, New Orleans, La., for Woodall and LeBlanc.

Before CLARK, Chief Judge, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

The district court dismissed the indictment in this case because of prosecutorial misconduct, and the government appeals.

On November 8, 1980, a New Orleans police officer was shot to death. There followed an intensive investigation by the police department to learn the identity of his murderers. During the investigation four citizens were killed by New Orleans police officers amidst allegations of beatings, illegal interrogations, and illegal ar-

rests by police. The Department of Justice empaneled a grand jury to investigate whether the alleged police misconduct violated federal law. The grand jury sat between December 1980 and July 1981, hearing about 50 witnesses, and returned an indictment charging seven New Orleans homicide detectives with violating 18 U.S.C. § 2, § 242 (deprivation of liberty without due process while acting under color of law) and 18 U.S.C. § 241 (conspiracy to deny liberty rights without due process). In response to defendants' motion for a bill of particulars, the district court reviewed in camera the transcript of discussions between the prosecution and the grand jury over the last two days of the grand jury. The court ordered the bulk of the transcripts released to the defendants, and the defendants moved to dismiss the indictments for prosecutorial misconduct before the grand jury. After a two-day hearing, the court dismissed the indictment on two grounds: (1) defendants' constitutional right not to be brought to trial except after a valid indictment and (2) the district court's supervisory power to protect the integrity of the grand jury process. The district court further stated that "[i]n those situations where it is necessary for the court to exercise its supervisory powers due to an abuse of the grand jury process, the existence of actual prejudice to the accused is unnecessary," citing *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610 (N.D.Okla.1977).

This conclusion contradicts the rule of this circuit, which states that even in the case of the most "egregious prosecutorial misconduct," the indictment may be dismissed only "upon a showing of actual prejudice to the accused." *United States v. Merlino*, 595 F.2d 1016, 1018 (5th Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980). Thus, whether the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants, an indictment may be dismissed only where the defendants' case has been unfairly prejudiced. In an attempt to define prejudice in this situation, we have stated that "[i]nflammatory re-marks made by a prosecutor justify the dismissal of an indictment if the improper remarks so bias the grand jurors that their votes were based on their bias." *United States v. Cathey*, 591 F.2d 268, 273–74 (5th Cir. 1979). In other words, we will dismiss an indictment only when prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury.

The defendants urge us to reconsider this rule and to apply a different standard when we are reviewing an indictment under supervisory powers rather than on constitutional grounds. It is argued that even in the absence of actual prejudice we must not condone such misdeeds; that to do so would impugn the integrity of our judicial system. However, we believe that as long as the grand jury maintains its discretion and independence our hands have not been sullied.

The defendants also point out that the prosecutorial conduct in this case would have required reversal had it occurred before a petit jury in a trial situation. The arguments that apply to petit juries do not apply to grand juries, and there is much prosecutorial conduct that is forbidden at trial but is permitted before the grand jury. The indictment is a preliminary step, and the defendant will have the safeguards associated with trial to insure that he will not be improperly convicted.

Thus it is our task to see that the grand jury served its proper function in the case before us. The fifth amendment states that no person shall be held to answer for a capital or otherwise infamous crime "unless on a presentment or indictment of a grand jury." "This constitutional guarantee presupposes an investigative body 'acting independently of either prosecuting attorney or judge,' *Stirone v. United States*, 361 U.S. 212, 218 [80 S.Ct. 270, 273, 4 L.Ed.2d 252] (1960), whose mission is to clear the innocent, no less than bring to trial those who may be guilty." *United States v. Dionisio*, 410 U.S. 1, 16–17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973). The grand jury has his-

torically served as a "protective bulwark standing solidly between the ordinary citizen and the overzealous prosecutor." *Id.* at 17, 93 S.Ct. at 773. The grand jury performed precisely this function in the case before us.

The initial indictment proposed by prosecutors had eleven counts and ten defendants and was rejected by the grand jury. The indictment that was returned by the grand jury had only five counts and seven defendants. The transcript of the last two days of grand jury proceedings shows an active, independent, and questioning grand jury that was familiar with a long and involved record and that questioned, rather than submitted to, statements and suggestions of the federal prosecutors.

■ The district court, in dismissing the indictment, listed several indiscretions by the prosecution but never actually found "prejudice." We will therefore review the prosecutors' activities under the standards enunciated above to determine whether the will of the grand jury was overborne.

The prosecutors referred to unsuccessful attempts to obtain information from the district attorney on either an exchange or subpoena basis. The prosecutors told the grand jury that the court was wrong in quashing a subpoena served on the district attorney but that they had decided not to appeal because it would delay the grand jury's consideration of the indictment. The district court found that the prosecutors conveyed the impression that the evidence the district attorney refused to turn over would provide additional support for an indictment. However, the prosecutors stated that they wanted this information only to insure that no evidence had been overlooked and to compare the identifications the alleged victims had made to state officials with the identifications those same persons made for the federal grand jury. Further, the discussion of this matter was brief and objective. There is no basis for a finding that this discussion could have affected the jury's consideration of the indictment.

■ The district court further found that prosecutors erred in allowing a juror to discuss a visit to a cemetery that had been mentioned by a witness earlier in the proceedings. The juror's visit to the cemetery and the subsequent discussion was not improper, and the prosecutor did not err in failing to direct the jury not to discuss the visit. The rules of evidence that apply to trials do not apply in grand jury proceedings. Fed.R.Evid. 1101(d)(2). Our federal grand jury was modeled after its English progenitor in which the jurors were not hampered by rigid procedures and could, in fact, act on their own knowledge in considering an indictment. *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). The Supreme Court has said that grand juries may initiate investigations based on "tips, rumors, evidence offered by the prosecutor, and their own personal knowledge." *United States v. Dionisio*, 410 U.S. at 15, 93 S.Ct. at 772. If a grand juror may initiate an investigation based on personal knowledge, he may use that knowledge and discuss his views with fellow jurors when considering whether to indict.

One of the prosecutors told the grand jury that since all the prosecutors signed the indictment, all felt an indictment was warranted. The prosecutors further expressed their opinions on the credibility of some of the witnesses. The district court found this to be error. However, the presentment of the indictment informs the grand jury that the prosecutors are convinced that an indictment should be returned. Thus, the fact that a prosecutor conveys such an impression to the grand jury does not require the dismissal of the indictment. *United States v. Cederquist*, 641 F.2d 1347, 1353 (9th Cir. 1981). It is not improper, as was done here, for an attorney merely to state an opinion as to guilt or as to any fact at issue, as long as it is clear to the jury that the opinion is based only on the evidence that is before the jury and that the jury itself can evaluate. *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978). Thus, a prosecutor may state, "I believe the evidence has shown the defend-

ant's guilt," but he may not state, "I believe that the defendant is guilty." *Id.* at 402. Further, any implication raised by the prosecutors' comments was countered by the fact that they, on several different occasions over the two days, told the jurors that it was the grand jury's function to decide who was telling the truth, what facts the evidence would support, and what type of charge, if any, the evidence would support.

The most troublesome issue in this case occurred after the grand jury voted on the original indictment proposed by the prosecutors. After deliberations, one juror (not the foreperson) announced to the prosecutors:

We have a discussion going that—well, being in the final analysis of all things that we had in the past, you know, that everyone had the chance to cast their ballot according to what they believe, and that it came out 10–10. And, that's the way it stands. Do we go before the federal magistrate with this?

The prosecutor responded: "We have just encountered a point of law that I have never encountered before which is less than twelve grand jury votes." This is an incredible response, considering that the prosecutor had earlier correctly informed the grand jury that if less than twelve members of the grand jury vote in favor of an indictment, the foreperson will endorse the indictment "Not a True Bill" and return it to the court. The prosecutor's response to the jury was error, and we find it highly objectionable.

Although the prosecutor's statement constitutes error, it is not reversible error. The proceedings that occurred after this unfortunate comment was made demonstrate that the grand jury definitely exercised its own independent will and was not overborne by the prosecution. The prosecutors correctly informed the grand jury that if twelve or more jurors would approve of some of the counts, they could vote on each count or pass an indictment with fewer counts and fewer defendants. Part of the model jury charge recommended by the Judicial Conference of the United States states:

Frequently charges are made against more than one person. It will be your duty to examine the evidence as it relates to each person and to make your finding as to *each* person in the relationship in which they may be joined in an indictment against more than one person.

(emphasis in original). Although one juror insisted that the deliberations were over, several others indicated that they would like to consider the counts individually. The grand jury then voted fourteen to six to amend the proposed indictment.

█ The prosecutor may not involve himself in deliberations but may advise the grand jury as to its duty. The transcript shows that it was not clear whether the tie vote meant that the grand jury had rejected all counts or only the specific combination of counts in the proposed indictment. Since the grand jury's duty was to review the charges against each person and since it was apparent that there was some uncertainty among the jurors as to whether they were able to split a proposed indictment, the prosecutors acted properly in attempting to be sure that portions of the indictment that could be passed were not eliminated because the grand jury incorrectly viewed the proposed indictment as inseparable and did not choose to pass other counts.

█ The jury returned from its second vote and told the prosecutors that it would like to see an amended indictment that included charges related to beatings but did not have charges on the arrests. Since the indictment had also included charges of unlawful detention in addition to unlawful arrests, the prosecutors asked whether the grand jury also wanted to eliminate all charges relating to unlawful detention. The prosecutor's question was appropriate, since the jurors' comments on returning from the vote did not indicate whether these counts should be dropped. The discussion between the prosecutors and the grand jurors was brief, and the jurors' comments made it quite clear that their intention was to eliminate only charges relating to the initial arrest of an individual.

After further deliberation, the grand jury returned an indictment, dropping six counts and three defendants from the original proposed indictment. This revote was proper. There is no doctrine that limits a grand jury to only one vote on a proposed indictment, and the prosecutors are free to submit alternative proposed indictments to the jury. The power of the grand jury "is continuous, and is therefore not exhausted or limited by adverse action taken by a grand jury or its failure to act, and hence may thereafter be exerted as to the same instances by the same or subsequent grand jury." *United States v. Thompson*, 251 U.S. 407, 413, 40 S.Ct. 289, 292, 64 L.Ed. 333 (1920). Even if a grand jury merely wanted to revote on the same indictment, it could do so.

In conclusion, although the prosecutors' immediate response to the tie vote misstated the law and was error, this misconduct was not of such extremity that the will of the grand jury was overborne. The grand jury is allowed to amend the original indictment, and it is expected that there will be some interplay between the prosecutors and the grand jury in this process. We therefore vacate the order of the district court and reinstate the indictment.

VACATED.