**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Willis Walter HOLLOWAY, Jr., Elwood**
**L. Hogan, James D. Sullivan,**
**Defendants-Appellants.**

No. 84–7321.

United States Court of Appeals,
Eleventh Circuit.

Dec. 16, 1985.
Rehearing and Rehearing En Banc
Denied Feb. 24, 1986.

William Roberts Wilson, Jr., Pascagoula, Miss., for Holloway.

Lionel C. Williams, Mobile, Ala., for Hogan.

Barry Hess, Richard Crump, Mobile, Ala., for Sullivan.

Robert C. Wilson, Mobile, Ala., for Elliott.

J.B. Sessions, III, U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Appellants are two former state court judges of Mobile County, Alabama and a lawyer who is alleged to have participated with them in receiving bribes for favorable treatment to certain accused persons in cases pending before the two judges.

The evidence is overwhelming as to the guilt of the two judges and participation in the scheme by the lawyer. Two other defendants did not appeal.[1] The appellants make no contention here that the evidence was insufficient to support their conviction and they make no complaint as to the sentences although the two judges received 20 year sentences.

The evidence showed that there was a team of six or seven persons including Holloway, the lawyer, three of whom were co-defendants who have not appealed, who are shown to have held out to several persons under indictment in the state courts the ability of certain members of the team to obtain favorable treatment at the hands of Judges Sullivan and Hogan in return for cash payments.

## I.  ISSUES ON APPEAL

The grounds of appeal asserted by the appellants are as follows:

I.  Whether the trial court erred in denying the appellants' motion to dismiss the indictment.

II.  Whether the trial court erred in not holding an evidentiary hearing regarding appellants Holloway and Sullivan's motion to dismiss the indictment.

III.  Whether the trial court abused its discretion in denying appellant Sullivan's motion for severance.

IV.  Whether the prosecution of a state court judge violates the Tenth Amendment to the United States Constitution.

V.  Whether the trial court erred in excluding testimony by attorney Robert F. Clark concerning alleged prior inconsistent statements of his client, Lester Pugh.

VI.  Whether the agreement between Lester Pugh and the government violated the appellant Hogan's Fifth Amendment rights.

We consider that only the first two grounds merit discussion by this Court.

## II.  DISCUSSION

The first two of the above issues deal with the allegations made by the appellants that the trial court erred in denying their motion to dismiss the indictment because they allege that several prospective grand jury witnesses were threatened and harassed by the prosecution to the extent that this amounted to prosecutorial misconduct of a kind that warranted a dismissal of the indictment.

The law dealing with this particular issue makes it plain that if a sufficiently egregious case of prosecutorial misconduct is shown, this Court has the inherent power to direct the indictment to be dismissed. *United States v. Pabian,* 704 F.2d 1533 (11th Cir.1983). In *Pabian,* the Court stated that the dismissal of an indictment on such grounds is an "extreme sanction which should be infrequently utilized." *Id.* at 1536.

*Pabian* said:

Although the federal judiciary exercises a supervisory role over federal grand juries, that role must be informed by recognition that dismissal of an indictment for prosecutorial misconduct is an "extreme sanction which should be infrequently utilized." *United States v. Owen,* 580 F.2d 365, 367 (9th Cir.1978).

704 F.2d at 1536.

The government contends that there was no prosecutorial misconduct in this case.

---

**1.** A third defendant failed to file a timely brief and his appeal was dismissed. It has now been reinstated and will be considered as a separate appeal.

It also contends that even though there had been the indictment should not be dismissed without a showing of prejudice to the defendants. That represents the holding of the Court of Appeals for the Fifth Circuit in *United States v. McKenzie*, 678 F.2d 629 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982).[2] In *McKenzie*, the Court held that: "Whether the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants, an indictment may be dismissed only where the defendant's case has been unfairly prejudiced." 678 F.2d at 631.

The question whether the district court ever may, in exercise of its supervisory authority over the grand jury, dismiss an indictment absent a showing of prejudice to the defendant was not reached by this Court in *Pabian*, although the issue was spelled out. It became unnecessary because the Court in that case found that there had been no prosecutorial misconduct.

The appellants' argument that this Court should require a dismissal of the indictment on account of egregious prosecutorial misconduct is based on the theory that prospective witnesses, all of whom were suspected by the government to have committed some offense, were told by government agents that their testimony was desired before the grand jury in this case and that the government was in a position to help them if they cooperated, and, correspondingly, was in a position to hurt them if they failed to cooperate. In order to have before it the actual facts as to what was said by way of threats, the trial court required the defendants to file affidavits from such prospective witnesses as they saw fit to support their contention. Affidavits were received from the following prospective grand jury witnesses:

### 1. *Joyce Chapman*

She testified that she was the wife of Calvin Chapman and that she was "contacted by FBI agent Christian, a female."

She told me that she understood that I had been arrested within the last several weeks. She told me that "we are responsible for having those charges brought up against you." The charges concerned the case that I had been a defendant in that had been nol prossed in 1981. She also told me that she could help me or hurt me on those charges and help or hurt my husband. She said she wanted some information on Judge Hogan and Mr. Holloway making a deal with my husband to pay $10,000 to give him probation.

I told her that there was no information that I could give her, that I did not know of any kind of a deal. I told her I could not make up any lies to help myself. She kept repeating that she could help me on my cases. She kept telling me that I was lying. I told her "well, just a little blackmail to hold over my head." She then left. . . .

I was also subpoenaed to appear as a witness before the Grand Jury and was told that I would be prosecuted for perjury if they could prove that I lied. I took this as a threat implying that I should say what they wanted me to say.

Joyce Chapman did not appear as a witness before the grand jury.

### 2. *Thomas M. Withers*

Withers' affidavit made no mention of any threat by the FBI or any other investigator. He was one of the defendants.

### 3. *Frank Parker*

I am Frank Parker and I operate a business at 5721 Old Rock Road, Mobile, Alabama. I have been interviewed by FBI agent McFadden. He told me that he had evidence that I had paid money to Dodson Fail to fix a criminal case pending against Gary McCarver. He threatened me with prosecution for bribing a state judge and with prosecution for lying to a Federal Grand Jury if I did not cooperate with him. These allegations

---

**2.** This case is not precedent binding on this Court.

were not true and I ordered him to leave my place of business.

Frank Parker testified before the grand jury but he does not now allege that he gave any untruthful statement.

### 4. *Samuel Robert Greene, III*

I am Samuel Robert Greene, III. I have been interviewed by FBI agent McFadden at my home at 954 Palmetto Street, Mobile, Alabama. Agent McFadden told me that I had paid $6,000 to fix a case in which I was a defendant in state court. He further told me that he would revoke my probation and charge me with bribing a state judge and perjury before a Federal Grand Jury if I did not cooperate, but nothing would happen to me if I told the Grand Jury what he told me to say.

Greene testified before the grand jury but he does not allege that he was coerced into telling any falsehood.

### 5. *Gary Steven McCarver*

I was on probation in state court for an assault conviction and had a new charge for assault. I was interviewed by FBI agent McFadden who accused me of paying money for fixing my pending case of assault. He threatened me with prosecution for bribing a state judge and for lying to a Federal Grand Jury if I denied this. He told me nothing would happen to me if I cooperated. I did not pay any money to fix my case.

I told the United States Attorney, Jeff Sessions, that I did not have "a sure thing" in my case. I told him this after he had shown me a statement written by McFadden that was not correct. Mr. Sessions gave me a disgusted look and told me that I had better tell the Grand Jury the truth.

McCarver testified before the grand jury but did not claim to have been overpowered into testifying to any falsehood.

In addition to the above affidavits, affidavits were filed by two lawyers. Both stated that *their clients had told them* of circumstances *that they considered to be*

*threats* either by the FBI or by the United States attorney's office. These affidavits, of course, did not subject the prospective witness to prosecution for perjury if their statements were proved to be false. Therefore, they cannot be considered as responding to the court's order, requiring proof "by affidavit or discovery material" as to the alleged government threats.

Thus, it appears that not a single prospective witness before the grand jury contended in his or her affidavit that the so-called "threats" by the government officials had caused him to testify falsely before that body. Moreover, the affidavits contained statements that are largely conclusory, rather than being an actual quotation of the statements made to the prospective witnesses by the prosecution. We disregard the affidavit of Joyce Chapman, because she did not testify before the grand jury at all. As noted above, Withers' affidavit made no mention of any threat. As to Frank Parker, his affidavit stated: "He threatened me with prosecution for bribing a state judge and with prosecution for lying to a federal grand jury if I did not cooperate with him." We do not have the language which Parker construed as a "threat" of prosecution. There could be nothing wrong in McFadden's telling Parker that he would be subject to prosecution for "lying to a federal grand jury," regardless of whether he cooperated with McFadden or not. Greene's affidavit did not give us the language which he claimed McFadden used from which he got the impression that McFadden "would revoke my probation and charge me with bribing a state judge," both state matters, nor is there any suggestion in his affidavit that McFadden "told" him to say anything that was not true. Finally, McCarver's affidavit doesn't seem to us to say anything objectionable. The bottom line of his affidavit is: "He threatened me with prosecution for bribing a state judge and for lying to a Federal Grand Jury if I denied this. He told me nothing would happen to me if I cooperated." This statement is a form of permissible notice that the prosecutor could proceed

against the witness unless he cooperated as a witness for the government and that he would be prosecuted for perjury if he lied. Besides, the affidavit does not include the words used to him by agent McFadden which he construed as being "a threat."

Appellants cite no case which draws the outer limits beyond which the prosecution may not go in seeking the cooperation of prospective witnesses either before a grand jury or for trial, and we have found none. Appellant Sullivan's brief deals with this matter as follows:

> Although in most instances cases of prosecutorial misconduct have involved the knowing use of perjured testimony and entrapment of the defendant by law enforcement officers, defendant has found no case which limits prosecutorial misconduct such that would require dismissing an indictment to the above situations.

Appellant's Brief, p. 17. Neither has defendant found a case which provides the limits beyond which the government cannot go in seeking cooperation of a witness.

We take it to be self evident that, so long as it is made known to a defendant in the criminal prosecution, the government may agree not to prosecute a prospective witness if he or she agrees to testify "for" the government. This policy seems thoroughly approved by the Supreme Court in its opinion in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972):

> We need not concern ourselves with the differing versions of the events as described by the two assistants in their affidavits. The heart of the matter is that one assistant United States attorney—the first one who dealt with Taliento—now states that he promised to Taliento that he would not be prosecuted if he *cooperated* with the Government. (Emphasis added.)

*Id.* at 153, 92 S.Ct. at 765. The Court did not criticize this action by the assistant U.S. Attorney. The Court held that the prosecution was required to notify the defendant of this agreement. The question

remains how far may the prosecution go in obtaining such "cooperation."

Partially because no witness testified that he was coerced to giving any evidence before the grand jury that was not true and partially because the affidavits given by the prospective witnesses were largely conclusory in their language, rather than expressly stating facts from which the court could determine that they were actually intimidated, we conclude that the facts before the trial court were neither sufficient to cause the court to dismiss the indictment nor to have a hearing on that issue. The government concedes in its brief that the prevalent rule as to the showing required to entitle a defendant to a hearing on a charge of prosecutorial misconduct is that if defendants "raise a material fact which, if resolved in accordance with the defendants' contentions, would entitle them to relief, they would be entitled to a hearing." Gov.Br., pp. 85, 86, citing *U.S. v. Irwin*, 612 F.2d 1182, 1187 (9th Cir.1980).

After stating that the "defendant has made no showing by affidavit or otherwise, that the alleged misconduct is prejudicial to the defendant," the Court also said: "The facts presented by the defendant, even if assumed to be true, do not constitute misconduct which warrants dismissal of the indictment." The Court also noted the important fact that all of the witnesses before the grand jury were available for cross-examination as to this precise question during the trial. Noticeably, very little effort was made at the trial to prove the truth of the contention that any of the witnesses had been intimidated.

As we did in the *Pabian* case, we hold that there was no showing of prosecutorial misconduct in this case. It is, therefore, unnecessary for us to determine "whether a district court ever may, in exercise of its supervisory authority over the grand jury, dismiss an indictment absent a showing of prejudice to the defendant." *United States v. Pabian, supra*, at p. 1540.

There is authority for both positions on this issue. As noted above, the Court of Appeals for the Fifth Circuit in *United States v. McKenzie, supra,* held that "whether the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants, an indictment may be dismissed only where the defendant's case has been unfairly prejudiced." 678 F.2d at 631.

Contrariwise, the Court of Appeals for the Third Circuit in *United States v. Serubo,* 604 F.2d 807 (3rd Cir.1979), has held that dismissal of an indictment in exercise of the supervisory power may be an appropriate remedy to correct flagrant prosecutorial misconduct despite the absence of prejudice to the defendant. *See Serubo,* 604 F.2d at 817. We follow the precept of the *Pabian* case: "We save that issue for another day." 704 F.2d at 1540.

The judgments are AFFIRMED.