896 F.2d 1368
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melvin Curtis COX, Jr., a/k/a Charles Cheatham, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne EDWARDS, Defendant-Appellant.
 Nos. 89-5072, 89-5077.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Dec. 29, 1989.
Decided: Feb. 13, 1990.
 
 W. Gaston Fairey, J. Christopher Mills, Fairey & Parise, P.A.; Daniel N. Ballard, for appellants.
 E. Bart Daniel, United States Attorney; Alfred W. Bethea, Jr., Assistant United States Attorney, for appellee.
 Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Two men wearing ski masks and armed with large guns robbed the Waccamaw branch of the Citizens & Southern National Bank in Spartanburg, South Carolina on February 18, 1986. One of the robbers cut his face on his gun and bled profusely. Bank surveillance photographs recorded the robbery. Authorities took samples of the blood. Several days later, an anonymous informant told the FBI that appellants Melvin Cox and Wayne Edwards committed the robbery. In March 1986, local authorities in Greenwood, South Carolina, arrested Cox, Edwards, and Winston Walden while they were attempting to break into a drug store.
 
 
 2
 Cox and Edwards appeal the district court's finding them in violation of 18 U.S.C. Sec. 2113(a) & (d) (bank robbery), 18 U.S.C. Sec. 2312 (interstate transportation of a stolen automobile), and 18 U.S.C. Sec. 924(c) (crime of violence committed with a firearm). They argue there was reversible prejudicial error based on (1) erroneous testimony before the grand jury that Cox's blood matched that found in the bank rather than the actual probability of one in thirty-eight that the two blood samples matched, (2) admission at trial of a rifle box with the serial number obliterated by an FBI fingerprint analysis even though the number was recorded and retained, and (3) admission at trial of hearsay testimony to show why the FBI first focused investigation on Cox and Edwards. We affirm.
 
 
 3
 The FBI interviewed Walden, who turned state's evidence against Cox and Edwards. He said they had asked him to participate in robbing the Spartanburg bank, and he helped to steal a blue Malibu car to use in the robbery. Although he did not participate in the robbery, he said Cox and Edwards called him immediately afterwards, then arrived at his house with Cox bleeding from a cut on his face. Walden said they told him they had thrown the bags and checks from the robbery into the river. Independent evidence corroborated the details he recited of phone calls, the stolen car, and disposal of the proceeds of the robbery. Walden also told the FBI that Cox owned an AK-47 rifle and showed them a gun box that he said Cox had left at his house.
 
 
 4
 The FBI took possession of the gun box, recorded the serial number, and sent the box to the laboratory for fingerprint analysis. None were found, but the serial number was obliterated by the analysis. The number was traced, however, to a purchase by Cynthia Duncan Jolicoer, Cox's girlfriend. She testified that she had bought the gun but it had been stolen before the robbery.
 
 
 5
 At trial, Walden was the main government witness, but other witnesses and exhibits, including the rifle box, corroborated his testimony, including details of the robbery that were not public knowledge. Additional evidence showed that the blood sample from the bank robbery was a good match with Cox's blood: one in thirty-eight individuals in the general population have the same genetic markers present in both Cox's blood and the blood found in the bank. Although incorrect statistics regarding the probability of the blood sample's match with Cox's blood were given to the grand jury, the error was corrected before trial.
 
 
 6
 When other evidence is sufficient to return an indictment valid on its face, the indictment will not be dismissed, United States v. Calandra, 414 U.S. 338, 345 (1974), unless there is perjury or actual prejudice to the defendants by prosecutorial misconduct. See United States v. Basurto, 497 F.2d 781, 785 (9th Cir.1974); United States v. McKenzie, 678 F.2d 629, 631-32 (5th Cir.1982). In the present case, we find the incorrect ratio given to the grand jury regarding the probability of the blood sample match will not support dismissal of the indictment.
 
 
 7
 The court also properly admitted the evidence of the rifle box. The number was recorded before it became illegible, and the defendants were notified of the evidence by the FBI report which showed both that the number had been traced to Cox's girlfriend and that a box had been submitted to fingerprint analysis. The FBI's trial brief submitted before trial also described the gun box, the serial number, and the relevance of its connecting Cox with the AK-47 rifle. In addition, the FBI told defense counsel that they could inspect the evidence before trial at the FBI office in their hometown of Greenville, South Carolina.
 
 
 8
 Finally, hearsay testimony to prove something other than the truth of the matter asserted is admissible. Anderson v. United States, 417 U.S. 211, 219-20 (1974). Here, the district court correctly and without objection admitted the FBI agent's testimony about an anonymous tip in order to show why he began to investigate Cox and Edwards.
 
 
 9
 We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.
 
 
 10
 AFFIRMED.