UNITED STATES of America, Plaintiff-Appellant,

v.

William A. KILPATRICK, Declan J. O'Donnell, Sheila C. Lerner, the Bank of Nova Scotia, Michael Alberga, C.S. Gill, and C.M. Smith, Defendants-Appellees.

Nos. 83–1363–1369, 84–2481–2487.

United States Court of Appeals, Tenth Circuit.

June 18, 1987.

Rehearing Denied Aug. 19, 1987.

Robert E. Lindsay, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Robert M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup, Alan Hechtkopf and James P. Springer, Tax Div., Dept. of Justice, Washington, D.C., and Robert N. Miller, U.S. Atty., Denver, Colo., were also on the brief) for plaintiff-appellant.

James E. Nesland, Ireland, Stapleton, Pryor & Pascoe, Denver, Colo., for all defendants-appellees (Theodore H. Merriam, Richard K. Rufner and Wagner & Waller, P.C., Englewood, Colo., and William C. Waller, Jr. and Denis H. Mark, Waller, Mark & Allen, P.C., Denver, Colo., were on the brief for defendant-appellee William A. Kilpatrick).

Robert G. Morvillo, Obermaier, Morvillo & Abramowitz, New York City (Robert J. Anello, was on the brief) for defendant-appellee The Bank of Nova Scotia.

Robert D. Grossman, Jr., Grossman and Flask, Washington, D.C. (James L. Treece, Treece, Bahr & Arkey, Littleton, Colo., was on the brief), for defendant-appellee Declan J. O'Donnell.

Sheila C. Lerner, pro se.

Donald E. Van Koughnet, Naples, Fla., for defendants-appellees Michael L. Alberga and Casey S. Gill.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and BOHANON, District Judge *.

HOLLOWAY, Chief Judge.

After a twenty month investigation conducted before two grand juries, this case began with the return of a twenty-seven count indictment charging all defendants-appellants with conspiracy, and charging several of the defendants additionally with mail fraud and/or tax fraud.[1] Defendant

---

* The Honorable Luther L. Bohanon, United States District Judge of the Eastern, Northern and Western Districts of Oklahoma, sitting by designation.

[1] The Bank of Nova Scotia was charged in ten counts with conspiracy to defraud the United States (18 U.S.C. § 371) (Count 1) and aiding and abetting a mail fraud (18 U.S.C. §§ 1341, 2) (Counts 13–21).

**1460**

Kilpatrick was charged in Count XXVII with obstruction of justice.

Initially the district court dismissed the first twenty-six counts of the indictment as improperly pleaded and for failure to charge a crime by failing to allege a lack of economic substance in the underlying transactions. *United States v. Kilpatrick,* 594 F.Supp. 1324, 1327 (D.Colo.1984). Following a separate motion by the Bank of Nova Scotia (Bank), the district court dismissed the counts in which the Bank was named for failure to allege the requisite knowledge and intent by the Bank to commit the crimes charged. *Id.* The Government appealed all these dismissals in Nos. 83–1363 through 83–1369.

Before argument here, as requested we partially remanded the case to the district court to determine whether misconduct on the part of Government attorneys in connection with the grand jury investigation and presentation constituted additional grounds for dismissal. Following the partial remand, Judge Winner issued an opinion which, among other things, summarized the status of the cases which were reassigned to Judge Kane, granted a new trial on the obstruction of justice count against Kilpatrick, and ordered disclosure of the grand jury transcript. *See United States v. Kilpatrick,* 575 F.Supp. 325 (D.Colo. 1983).

After ten days of hearings Judge Kane dismissed all twenty-seven counts of the indictment because of prosecutorial misconduct[2]. The Government also appealed these dismissals in Nos. 84–2481 through 84–2487. With the latter appeals we consolidated Nos. 83–1363 through 83–1369, discussed above. In this opinion we dispose of the issues raised in appeals Nos. 83–1363 through 83–1369 and Nos. 84–2481 through 84–2487. Our separate opinion to follow will address the issues raised in No. 83–2284, the Government's appeal from the order for a new trial for Kilpatrick challenging adverse publicity concerning

Government counsel, and No. 84–1231, a mandamus proceeding also complaining of adverse publicity concerning Government counsel.

We conclude that we must reverse the dismissals by the district court and order reinstatement of all counts of the indictment.

## I

### Sufficiency of the indictment

#### A

The Government appeals the order dismissing the first twenty-six counts of the twenty-seven count indictment, Nos. 83–1363 through 83–1369. (I R. 274). The indictment was based on two alleged fraudulent investment enterprises sold to investor-taxpayers in the United States. The district court dismissed the first twenty-six counts because of their failure to allege the lack of economic substance in the transactions underlying the tax shelter program, and because of the court's concern that the defendants would not be able to plead a conviction or acquittal as a bar to subsequent prosecution. (IV R. 3–4). Furthermore, the ten counts naming the Bank were dismissed as to the Bank on the additional ground that the indictment failed to allege that the Bank or its representatives had the requisite knowledge or intent to commit the crimes charged. (IV R. 7–11).

Count I, which related to the structured coal programs in the United States, charged five of the individual defendants and the Bank with "unlawfully, willfully, and knowingly conspir[ing] ... to defraud the United States of America by impeding, impairing, obstructing and defeating the lawful functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment and collection of the revenue through false and fictitious claims of deductions for advance royalty 'payments' ..." in violation

---

2. The district court's first dismissal left standing Count XXVII of the indictment which charged the defendant Kilpatrick with obstructing the grand jury investigation of the tax shelters. After a jury trial the defendant Kilpatrick was found guilty of obstruction of justice. *See United States v. Kilpatrick,* 575 F.Supp. 325, 326 (D.Colo.1983). However, the defendant Kilpatrick moved for a new trial, which Judge Winner granted. *See id.* at 342.

of 18 U.S.C. § 371. (I R. 1–2). The crux of the conspiracy charged in Count I was the creation in mineral leases of false tax deductions for nonexistant advance royalty payments for investor-taxpayers. The charging paragraph of Count I is followed by an extensive listing of "Means And Methods" and sixty-four overt acts.

Count II, which concerned the funding of the research and development of methanol conversion processes, charged five of the individual defendants with a conspiracy similar to the conspiracy alleged in Count I in violation of 18 U.S.C. § 371. The crux of the conspiracy charged in Count II was the creation of false tax deductions on nonexistant research and development payments resulting from investments in limited partnerships formed to fund research and development of methanol conversion processes.

Counts III through X charged various defendants under 26 U.S.C. § 7206(2) with aiding and assisting in the preparation and presentation of false partnership and individual tax returns because of representations made to various taxpayers that the taxpayers were entitled to claim deductions for royalty payments (Counts III through VI), or research and development payments (Counts VII through X), when no such deductions were allegedly permissible. Counts XI and XII charged defendants Kilpatrick and O'Donnell with willfully making and subscribing false individual tax returns in violation of 26 U.S.C. § 7206(1). Counts XIII through XXVI charged various defendants with substantive mail fraud violations under 18 U.S.C. § 1341, based on their alleged defrauding of investors in connection with the programs alleged in Counts I and II.

After extensive briefing and hearings, the district court dismissed Counts I and II. First, the court dismissed the two counts for failure to allege lack of economic substance of the underlying enterprises. Such justification must necessarily rest on the view that such lack of economic substance is an essential element of a § 371 crime in these circumstances. Second, the court dismissed the two counts because of its concern that the defendants would not be able to plead a bar to any subsequent prosecution. The parties stipulated that the programs which formed the basis of Counts I and II also served as the foundation of the fraud alleged in Counts III through XXVI. (I R. 274–75). The court thus dismissed those counts. (*Id.*) Moreover, the court dismissed as to the Bank, finding that knowledge and intent on the Bank's part was not sufficiently alleged.

**B**

■ An indictment is sufficient if it (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *see also United States v. Salazar,* 720 F.2d 1482, 1486 (10th Cir.1983), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985).

> The test is not whether the indictment could have been made more definite and certain. Rather, before a conviction, the indictment standing alone must contain the elements of the offense intended to be charged and must be sufficient to apprise the accused of the nature of the offense so that he may adequately prepare a defense. And, after a conviction, the entire record of the case must be sufficient so as to enable the accused to subsequently avail himself of the plea of former jeopardy if the need to do so should ever arise.

*Clay v. United States,* 326 F.2d 196, 198 (10th Cir.1963), *cert. denied,* 377 U.S. 1000, 84 S.Ct. 1930, 12 L.Ed.2d 1050 (1964) (footnote omitted); *see also* 1 C. Wright, Federal Practice and Procedure § 125, at 364–65 (2d ed. 1982).

We hold that the indictment is sufficiently precise to meet the requirements of the Constitution and Rule 7(c) of the Federal

Rules of Criminal Procedure.[3] We agree with the district court that the basis of Counts I and II also served as the foundation of the fraud alleged in Counts III through XXVI. Consideration of the first two counts alone was urged in the briefs submitted. Therefore, we direct our attention primarily to Counts I and II. *Accord United States v. Arge,* 418 F.2d 721, 723 (10th Cir.1969).

## C

### Essential elements of the offense charged

The court should dismiss an indictment if it does not "contain[ ] the elements of the offense intended to be charged." *Russell,* 369 U.S. at 763, 82 S.Ct. at 1047. All the defendants contend, and the district court agreed, that the failure to allege the lack of economic substance of the underlying programs rendered the indictment fatally defective. We disagree.

▮ Count I charges all the individual defendants and the Bank with defrauding the United States of America "through false and ficticious claims of deductions for advance royalty 'payments'...." (I R. 2). We believe the allegation in Count I of "false and ficticious claims of deductions" is sufficient when read in light of the entire Count. It is true that indictments under the broad language of the general conspiracy statute "must be scrutinized carefully as to each of the charged defendants because of the possibility, inherent in a criminal conspiracy charge, that its wide net

may ensnare the innocent as well as the culpable." *Dennis v. United States,* 384 U.S. 855, 860, 86 S.Ct. 1840, 1843, 16 L.Ed.2d 973 (1966) (citations omitted). However the indictment should be read as a whole and interpreted in a common-sense manner. *See United States v. Hajecate,* 683 F.2d 894, 898 (5th Cir.1982), *cert. denied,* 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983); *see also* 8 J. Moore, Moore's Federal Practice ¶ 7.04, at 7–20 (2d ed. 1985). Count I charges that five of the individual defendants and the Bank conspired to defraud the United States (unlawful objective) by false and ficticious claims of deductions (the means). *Accord Schino v. United States,* 209 F.2d 67, 69 (9th Cir. 1953), *cert. denied,* 347 U.S. 937, 74 S.Ct. 627, 98 L.Ed. 1087 (1954).

Count II charges five of the individual defendants with the same conspiracy but as to research and development payments. It states the gist of the offense of conspiracy and adequately lays out the grand jury's charges and the general factual circumstances underlying them. The fact that the defendants contest the substance of the offense charged does not render the indictment insufficient. *See United States v. Crooks,* 804 F.2d 1441, 1450 (9th Cir. 1986). We do not feel that a lack of economic substance allegation is required in an indictment already alleging that the defendants conspired to defraud the United States through *false* and *ficticious* claims of deductions for research and development payments.[4]

**3.** The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; ...." Rule 7(c)(1) provides in part:

> The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.

**4.** The defendants cite a number of cases which consider the economic substance of a given transaction to be pivotal to the outcome of the case. *E.g., Frank Lyon Co. v. United States,* 435 U.S. 561, 573, 577, 98 S.Ct. 1291, 1298, 1300, 55 L.Ed.2d 550 (1978); *see also United States v. Mallas,* 762 F.2d 361, 363 (4th Cir.1985); *United States v. Carruth,* 699 F.2d 1017, 1021–22 (9th

Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984); *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 89, 94 (2d Cir.), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). They do not, however, address the sufficiency of an indictment, nor do they provide principles helpful here. The sufficiency of an indictment on a motion to dismiss is tested by its allegations. Fed.R.Crim.P. 12(b)(2). The points defendants argue are to be tested at trial. *See United States v. Knox,* 396 U.S. 77, 83 n. 7, 90 S.Ct. 363, 367 n. 7, 24 L.Ed.2d 275 (1969); *cf. Crooks,* 804 F.2d at 1448.

We do not feel that the holdings in *Frank Lyon* or the other cases show a fatal defect in the indictment here for want of an allegation of lack of economic substance to the underlying

The Bank further contends that Count I fails to allege the requisite knowledge and intent on its part, which it says is necessary to state an offense under 18 U.S.C. § 371. It points to "key charging" paragraphs which list various individual defendants, but which do not name the Bank.

■ It is axiomatic that "all the material facts and circumstances embraced in the definition of the offence must be stated, or the indictment will be defective." *United States v. Hess*, 124 U.S. 483, 486, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888). Moreover, a court cannot by implication add an essential element to the indictment. "[A defendant] cannot be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir.1979) (citations omitted). Courts, however, do not insist that any particular word or phrase be used in stating an essential element. *See United States v. Garcia-Geronimo*, 663 F.2d 738, 742 (7th Cir.1981).

■ The requisite mental element for a § 371 offense must be alleged in the indictment. *See United States v. Stevens*, 612 F.2d 1226, 1230 (10th Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). The charging paragraph in Count I uses the phrase "unlawfully, willfully, and knowingly conspire ... to defraud the United States of America ... in the ascertainment, computation, assessment and collection of the revenue...." (I R. 1–2). Moreover, the allegations in Count I go further to charge the requisite knowledge and intent. Under the "Means and Method" portion of Count I the indictment alleges that the Bank, along with other named defendants, "devised and/or participated in a scheme to make it appear that the required payments had, in fact, been made...." (*Id.* at 6). It is further charged that the Bank "agreed to further conceal the fact that the purported payments by P & J Coal Company could not be made and that the basis of the 1978

funding was nothing more than a 'check kite' and/or 'check swap'...." (*Id.* at 7). It is further charged that the Bank "knew that this type of 'check kite' was ficticious, and was conducted to create checks to make it appear that P & J Coal Company had made its required loans." (*Id.* at 8). It is also alleged that the Bank "knew that P & J Coal Company had not in actuality made its payments as required and that the transaction was a fiction designed to create the illusion that P & J Coal Company had made payments to investors...." (*Id.* at 9). Furthermore, it is stated that the Bank conspired with the named defendants to have "the records of and pertaining to Marlborough Investments, Ltd., as well as other entities, ... moved, altered, and/or destroyed." (*Id.*).

Both the initial charging paragraph and the several "Means And Methods" paragraphs aver the requisite knowledge or intent on the part of the Bank. Whether the exact term used is "knowledge" or "devised" or "agreed to conceal" is not relevant; "[t]here is no magic to the words used ... to allege guilty knowledge." *Davis v. United States*, 347 F.2d 378, 379 (10th Cir.1965) (per curiam). Moreover, "[w]hen the same mental element is required for each act ... an initial recital of the element is sufficient." *Stevens*, 612 F.2d at 1230. Count I depicts the Bank as an active participant in a conspiracy to defraud the IRS in its assessment and collection of income taxes. The essence of Count I is the alleged concerted conduct on the part of all the defendants. Thus Count I adequately charges a conspiracy to defraud the United States, and with the required specificity alleges the culpable role of each of the defendants. *Dennis*, 384 U.S. at 860, 86 S.Ct. at 1843; *see also United States v. Turkish*, 623 F.2d 769, 771 (2nd Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). And we conclude that the indictment suffi-

---

transactions. The indictment *does* charge a lack of resources to make payments and loans, fictitious transactions, and check kites and check swaps used therefor, in the Count I and II state-

ments of "Means and Methods." The indictment is thus sufficient as a statement of the offenses charged.

ciently charged the requisite mental element on the part of the Bank.[5]

## D

### Notice of the charges

We must decide next whether the indictment was adequate to inform the defendants of the charges.

■■■ Allegations of the means and methods as well as the overt acts may be considered in judging the sufficiency of the conspiracy counts. *See United States v. Watson,* 594 F.2d 1330, 1341 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Counts I and II set out the transactions purporting to be the gravamen of the conspiracy charges with specificity. Relevant names, dates, companies involved, and amounts of money are averred in detail. An extensive listing of "Means and Methods" and "Overt Acts" is made. Thus the indictment is replete with the particulars of the acts on which the two counts are predicated. It adequately charges the individual defendants and the Bank with definiteness, certainty, and with reasonable particularity as to time and place, naming persons or entities involved in the conspiracies. *See, e.g., Wong Tai v. United States,* 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927).

## E

### Preclusion of double jeopardy

Finally we must consider whether the indictment is sufficient to adequately protect the defendants against double jeopardy.

■■■ In addressing this question we note that the defendants are permitted to

use the entire record and the judgment, not merely the indictment, in asserting double jeopardy. *See Arge,* 418 F.2d at 725; *Clay,* 326 F.2d at 199; *see also* 1 C. Wright, *supra* at § 125, p. 365. We are not persuaded that the indictment fails to adequately protect the defendants. It lays out the necessary facts with specificity as to the relevant times, places, persons, and entities and the charges made against each defendant. Along with the entire record in this case, the indictment will provide adequate safeguards against double jeopardy.

## II

### Prosecutorial misconduct

### A

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." The grand jury is a "grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety...." *Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). The function of the grand jury "was not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or personal ill will." *Hale v. Henkel,* 201 U.S. 43, 59, 26 S.Ct. 370, 373, 50 L.Ed. 652 (1906). A grand jury proceeding is not adversarial but *ex parte. See United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). We are mindful of the oft-quoted words of Judge Learned Hand

---

**5.** The Bank cites as supplemental authority *United States v. Golitschek,* 808 F.2d 195 (2d Cir.1986), for the proposition that the omission of the Bank from the indictment's list of defendants with specific knowledge of the alleged violations of tax laws is fatal. *Golitschek* does not address the sufficiency of an indictment; rather, that case reviews the propriety of certain jury instructions concerning the defendant's knowledge as to the legality of planned shipments of helicopters from the United States to Iran. *Id.* at 197.

Moreover, in focusing exclusively on the omission the Bank fails to recognize one of the fundamental canons of construction in interpreting an indictment; that is, an indictment must be read as a whole and interpreted in a common-sense manner. Employing this canon, we are convinced that the indictment sufficiently charged the requisite mental element on the part of the Bank.

that "[s]ave for torture, it would be hard to find a more effective tool of tyranny than the power of unlimited and unchecked *ex parte* examination." *United States v. Remington,* 208 F.2d 567, 573 (2d Cir.1953) (L. Hand, J., dissenting), *cert. denied,* 347 U.S. 913, 74 S.Ct. 476, 98 L.Ed. 1069 (1954).

The separation of powers doctrine mandates judicial respect for the independence of both the prosecutor and the grand jury. *See United States v. De Rosa,* 783 F.2d 1401, 1404 (9th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986); *United States v. McClintock,* 748 F.2d 1278, 1283 (9th Cir.1984), *cert. denied,* — U.S. ——, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985). Dismissals of indictments for prosecutorial misconduct are rarely upheld. *United States v. Anderson,* 778 F.2d 602, 606 (10th Cir.1985); *United States v. Pino,* 708 F.2d 523, 530 (10th Cir.1983); *see also United States v. Buchanan,* 787 F.2d 477, 487 (10th Cir.1986). Dismissal of an indictment for prosecutorial misconduct rests upon two distinct though closely related theories. A court may dismiss on the bases of the Fifth Amendment Due Process or Grand Jury Clauses.[6] The constitutional concerns focus on the fairness to the defendant and on remedying any harm to his basic rights. *See McClintock,* 748 F.2d at 1284; *Pino,* 708 F.2d at 530–31.

A court may also dismiss an indictment by relying on its supervisory powers. *See Pino,* 708 F.2d at 530. The supervisory powers theory is premised on the federal courts' inherent ability to "formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). The supervisory powers theory focuses on deterring illegality and protecting judicial integrity. *See McClintock,* 748 F.2d at 1285 (citing *United States v. Payner,* 447 U.S. 727, 735 n. 8, 100 S.Ct. 2439, 2446, n. 8, 65 L.Ed.2d 468 (1980) ). However, the common theme of the cases is that prosecutori-

al misconduct alone is not a valid reason to dismiss an indictment. "An indictment may be dismissed for prosecutorial misconduct which is flagrant to the point that there is *some significant infringement on the grand jury's ability to exercise independent judgment.*" *Pino,* 708 F.2d at 530 (emphasis added); *see also United States v. Page,* 808 F.2d 723, 726–27 (10th Cir.1987).

Since briefing and argument we now have the Supreme Court's opinion in *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), for which we abated these appeals, and supplemental briefs thereon and our opinion in *United States v. Taylor,* 798 F.2d 1337 (10th Cir. 1986). In *Mechanik,* the defendants moved before the verdict for dismissal of the indictment on the ground that the simultaneous presence and examination of two Government agents had violated Fed.R. Crim.P. 6(d) (*i.e.,* unauthorized presence before the grand jury). 475 U.S. at ——, 106 S.Ct. at 940. The district judge took the motion under advisement until the conclusion of the trial, when he denied it. *Id.* at ——-——, 106 S.Ct. at 940–42. The Fourth Circuit reversed in part, dismissing one count of the indictment using a *per se* dismissal rule. The Supreme Court reversed in part, holding that "[m]easured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* at ——, 106 S.Ct. at 942 (footnote omitted). Moreover, the Court held:

[H]owever diligent the defendants may have been in seeking to discover the basis for the claimed violation of Rule 6(d), the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation. In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because

---

**6.** We have pointed out that dismissal has been based on the Fifth Amendment Due Process Clause or on the court's supervisory power. *Pino,* 708 F.2d at 530, and cases there cited. The Ninth Circuit has cited the Grand Jury

Clause as a constitutional ground for dismissal. *See United States v. Sears, Roebuck and Co.,* 719 F.2d 1386, 1391 n. 7 (9th Cir.1983), *cert. denied,* 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984).

of an error in the earlier grand jury proceedings.

*Id.* at ——, 106 S.Ct. at 943.

In *Taylor* we distinguished between technical errors like those addressed in *Mechanik* and errors which adversely threaten a defendant's right to fundamental fairness in the criminal process. The former category of error falls within the rule announced in *Mechanik*, while the later category of error is not rendered moot by a petit jury's determination of guilt. *See Taylor,* 798 F.2d at 1340.

■ In light of *Mechanik* and the analysis in our *Taylor* and *Pino* opinions, we conclude that consideration of dismissal of an indictment because of prosecutorial misconduct before a grand jury calls for weighing several factors. First, a reviewing court must determine whether the claimed errors should be characterized as technical or procedural and affecting only the probable cause charging decision by the grand jury, or whether the alleged errors should be characterized as threatening the defendant's right to fundamental fairness in the criminal process. If the errors can be characterized as procedural violations affecting only the probable cause charging decision by the grand jury, then the defendant must have successfully challenged the indictment before the petit jury rendered a guilty verdict. *Mechanik,* 475 U.S. at —— ———, 106 S.Ct. at 941-43. If, however, the errors can be characterized as threatening the defendant's rights to fundamental fairness as "go[ing] beyond the question of whether the grand jury had sufficient evidence upon which to return an indictment, . . . ," a determination of guilt by a petit jury will not moot the issue. *Taylor,* 798 F.2d at 1340.

■ Second, it must be determined whether the prosecutor engaged in flagrant or egregious misconduct which sig-

nificantly infringed on the grand jury's ability to exercise independent judgment. *Pino,* 708 F.2d at 530. Thus even assuming misconduct, a failure by the defendant to show a significant infringement on the ability of the grand jury to exercise its independent judgment in the charging decision will result in the denial of a motion to dismiss. "The relevant inquiry focuses on the impact of the prosecutor's misconduct on the grand jury's impartiality, not on the degree of the prosecutor's culpability." *De Rosa,* 783 F.2d at 1405 (citation omitted).[7]

Here the district court dismissed the indictment as a whole, stating that the indictment was dismissed for numerous violations of Rule 6(d); that the indictment was dismissed because of numerous violations of Rule 6(e); that the indictment was *not* dismissed *solely* for use of "pocket immunity" in contravention of 18 U.S.C. §§ 6002 and 6003; that the indictment was *not* dismissed *solely* for violations of the Fifth Amendment; that the indictment was *not* dismissed *solely* for the knowing and deliberate presentation of misinformation to the grand jury; that the indictment was *not* dismissed *solely* for violations of the Sixth Amendment; and that the indictment was dismissed because of the totality of the circumstances, including the numerous violations of Rule 6(d) and (e), the violations of 18 U.S.C. §§ 6002 and 6003, the violations of the Fifth and Sixth Amendments, the knowing presentation of misinformation to the grand jury, and the mistreatment of witnesses. 594 F.Supp. at 1353.

In its separate dismissal for violations of Rule 6, the district court employed a *per se* rule of dismissal. However, in dismissing the indictment under the totality test, the court employed the standard explicated in *Pino,* 708 F.2d at 530. The Government contends that the district court's factual findings as well as the legal conclusions

---

7. The first consideration is necessitated by the Supreme Court's opinions in *Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) and *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The second and third factors are proper because of the concerns highlighted in *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), where

the Court held that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Id.* at 363, 76 S.Ct. at 409 (footnote omitted).

drawn were in error. Moreover, the Government alleges that the indictment was the product of an independent grand jury and thus valid. We agree substantially with the Government's argument and therefore must reverse.

**B**

▮ The defendants-appellees vigorously argue that the appropriate standard of review for the district court's findings is the clearly erroneous standard, under which they contend that reversal is not warranted. Our review of whether the prosecutors engaged in specific flagrant or egregious misconduct before the grand jury involves questions of historical fact governed by the clearly erroneous standard. *Campbell v. United States*, 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); *cf. Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Of course, such findings of historical fact are clearly erroneous only when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. at 573, 105 S.Ct. at 1511 (1985).

Here, however, the facts are essentially admitted or specifically found by the district court and the law is undisputed. In such instances the issue is whether the law applied to the facts satisfies the legal standard of conduct binding on the prosecutor. Although the question can be viewed as one going to an ultimate fact, *i.e.*, whether the independent judgment of the grand jury has been infringed, we nevertheless conclude that the issue primarily involves the consideration of legal principles, calling for *de novo* review by the appellate court. *See Supre v. Ricketts*, 792 F.2d 958, 961 (10th Cir.1986); *cf. Chaney v. Brown*, 730 F.2d 1334, 1346 (10th Cir.1984), *cert. denied*, 469 U.S. 1090, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984) (holding that the issue whether withheld evidence might have affected guilt or punishment determination so that due process was denied is open for

federal court review despite presumption of correctness of state court findings).

Accordingly, as to the trial court's critical rulings that the misconduct found tainted the grand jury indictment with its illegality, *see, e.g.*, 594 F.Supp. at 1349, that the abuses constituted systematic and pervasive overreaching, that the grand jury "was usurped and that time-honored constitutional principles were sullied," 594 F.Supp. at 1352, we review the rulings *de novo*, while we accept the underlying findings of historical fact, with some exceptions noted in this opinion. *See De Rosa*, 783 F.2d at 1404 ("We review *de novo* a district court's determination of whether a prosecutor's alleged misconduct before a grand jury warrants dismissal of the indictment.").

**C**

### Rule 6(d) violations by unauthorized presence before the grand jury

▮ The district court found that "the [IRS] agents made many joint appearances before the grand jury, without the presence of government counsel, and read transcripts to the jurors." 594 F.Supp. at 1330 (citations to record omitted). Finding the tandem reading of transcripts of proceedings before the first grand jury by the IRS agents to the second grand jury violative of Fed.R.Crim.P. 6(d), the district court found these violations to be one independent ground for dismissal of the indictment. 594 F.Supp. at 1344.

Rule 6(d) provides:

**Who May Be Present.** Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

We agree there was a violation of the rule. The record clearly shows that on several occasions IRS agents appeared before the grand jury jointly reading transcripts. (XIX R. 482–85; XX R. 633–34,

692–93, 709–11). The record also shows that the prosecutors at times would leave the proceedings, allowing the agents to continue reading.[8]

Nevertheless, we disagree with the dismissal. We believe that *Mechanik*, which the district judge did not have before him, forecloses the use of a *per se* dismissal rule for violations of Rule 6:

> We cannot accept the Court of Appeals' view that a violation of Rule 6(d) requires automatic reversal of a subsequent conviction regardless of the lack of prejudice. Federal Rule of Criminal Procedure 52(a) provides that errors not affecting substantial rights shall be disregarded. We see no reason not to apply this provision to 'errors, defects, irregularities or variances' occurring before a grand jury just as we have applied it to such error occurring in the criminal trial itself. *See United States v. Hasting*, 461 U.S. 499, 509 [103 S.Ct. 1974, 1981, 76 L.Ed.2d 96] (1983); *Chapman v. California*, 386 U.S. 18, 21–24 [87 S.Ct. 824, 826–828, 17 L.Ed.2d 705] (1967); *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986)].

*Mechanik*, 475 U.S. at ——, 106 S.Ct. at 942.[9]

While here the violations were called to the attention of the court before trial so that we do not have a verdict of guilty to serve as a basis for holding that no prejudice in the charging decision occurred, we nevertheless are convinced that a *per se* rule of dismissal for Rule 6(d) violations as earlier applied in *United States v. Pignatiello*, 582 F.Supp. 251, 254–55 (D.Colo. 1984) (and cases cited therein), is no longer proper since *Mechanik*. We find no other circumstances showing that the violation of the Rule resulted in prejudice or infringement on the grand jury's independent functioning, as discussed below. Thus the dismissal for violations of Rule 6(d) without more cannot stand.

### D

### Rule 6(e) violations

The district court also found that the Government attorneys violated Fed.R. Crim.P. 6(e) by improperly disclosing and using grand jury materials, and by violating the rules of secrecy applicable to grand jurors, interpreters, stenographers, recording device operators, typists, Government attorneys, and persons to whom disclosure is made under Rule 6(e)(3)(A)(ii). 594 F.Supp. at 1331. The court held:

> [W]here violations of Rule 6(e) are intentional or reckless and systematic, the sanction of contempt is insufficient and dismissal of the indictment is warranted. Under such circumstances, it is not necessary for the defendant to show that he has been prejudiced by the violations. *In the instant case, however, such showing of prejudice has been convincingly made.*

*Id.* at 1348 (emphasis added).

Rule 6(e) implements the traditional policy of cloaking grand jury proceedings. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 425, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983). The Supreme Court noted several reasons for the policy of secrecy:

> First, if preindictment proceedings are made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as

---

**8.** The record further shows that one or possibly two of the agents were not placed under oath before reading the transcripts. (XIX R. 486–90; XX R. 709–11). Nevertheless, we do not believe the clarification of this issue is necessary to the resolution of this case.

**9.** The defendants point out in their supplemental briefs that the Court in *Mechanik* expressed "no opinion as to what remedy may be appropriate for a violation of Rule 6(d) *that has*

*affected the grand jury's charging decision* and is brought to the attention of the trial court before the commencement of trial." *Mechanik*, 475 U.S. at ——, 106 S.Ct. at 943 (emphasis added) (footnote omitted). We feel that this language did leave open a determination whether dismissal for such a violation, timely raised, may be justified if prejudice is shown affecting the charging decision.

they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 219, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979) (footnote ommitted). Rule 6(e) operates as the measure of the privilege of access to grand jury materials.

■ The Government contends that dismissal of an indictment is not an appropriate remedy for a Rule 6(e) violation. In so arguing, the Government relies on the maxim *"expressio unius est exclusio alterius."* The Rule provides "[a] knowing violation of Rule 6 may be punished as a contempt of court." Fed.R.Crim.P. 6(e)(2). The contempt language is permissive only. In the usual case Rule 6(e) can be enforced by a contempt citation. *See United States v. Malatesta*, 583 F.2d 748, 753 (5th Cir.1978), *modified on other grounds*, 590 F.2d 1379 (5th Cir.) (en banc), *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). Nevertheless, violations of Rule 6(e) may justify dismissal of the indictment where there has been an abuse of the grand jury process. *See United States v. Kabbaby*, 672 F.2d 857, 863 (11th Cir.1982) (per curiam); *Malatesta*, 583 F.2d at 753. However, the focus of our inquiry must be on the integrity of the grand jury's process and independence, rather than on the propriety of the Government's conduct. *See Kabbaby*, 672 F.2d at 863; *United States v. Phillips*, 664 F.2d 971 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

■ Here the district court found reckless and systematic violations of Rule 6(e). Insofar as the court's opinion relied on such Rule 6(e) violations as a *per se* ground of dismissal, we again disagree. We hold that dismissal cannot be premised on such Rule 6(e) violations, *ipso facto.*

The court did find in addition that the violations caused prejudice, and we will treat that point in discussing the dismissal based on the totality of the circumstances.

### E

### The totality of misconduct before the grand jury

The district court concluded its opinion by stating:

The indictment is dismissed because of the totality of the circumstances which include numerous violations of Rule 6(d) and (e), Fed.R.Crim.P., violations of 18 U.S.C. §§ 6002 and 6003, violations of the Fifth and Sixth Amendments to the United States Constitution, knowing presentation of misinformation to the grand jury and mistreatment of witnesses.

594 F.Supp. at 1353. The court employed the totality of the circumstances test of *Pino*, 708 F.2d at 530, to dismiss all twenty-seven counts of the indictment. The dismissal was premised on findings that Rule 6(d) and (e) were systematically violated; that IRS agents were sworn as "agents of the grand jury;" that summaries of evidence were misleading; that granting informal immunity was improper; that calling seven witnesses to appear solely to assert their Fifth Amendment privilege was improper; that a grand jury witness was mistreated; and that there were post-indictment violations of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).[10]

---

10. The district judge noted that the *Massiah* violations by definition occurred after the indictment was returned, and that defendants have demonstrated no prejudice from these violations; that the Bank's counsel had performed "ably and adequately throughout the litigation." He therefore concluded that dismissal of the indictment was an inappropriate remedy for the *Massiah* violations. 594 F.Supp. at 1351. Nevertheless the judge also said that the "*Massiah* violations must enter into my general qualitative assessments of the prosecutor's and grand jury's conduct." *Id.* He thus apparently weighed these violations as one element of the totality of the circumstances—one ground for dismissal of the indictment.

We first consider whether the defendants challenged the indictment before the petit jury rendered a guilty verdict. It appears that all the named defendants successfully moved to dismiss the first twenty-six counts of the indictment before the commencement of the trial. The defendant Kilpatrick successfully moved to dismiss the twenty-seventh count (obstruction of justice) after the petit jury had rendered a guilty verdict. However, the district judge granted his motion for a new trial. Therefore, we will treat the defendant Kilpatrick's claim as to the twenty-seventh count along with that of the other defendants.[11] Thus we need not decide which errors affected only the probable cause determination of the grand jury and which errors implicated the defendants' rights to fundamental fairness. The rationale for foreclosing review recited in *Mechanik* is not applicable with respect to this issue.

■ We are not persuaded by the several reasons given for the dismissal. First, summaries of evidence given before the grand jury are permissible and often helpful, especially in complicated cases such as this. It must be remembered that this complicated tax fraud case spanned twenty months and involved two grand juries. Moreover, the district court is prohibited from looking behind the indictment to determine if it was based on inadequate or incompetent evidence. *Costello*, 350 U.S. at 363, 76 S.Ct. at 408; *see also United States v. Kysar*, 459 F.2d 422, 424 (10th Cir.1972).[12] We cannot in these proceedings go into trial of the general issue, the insufficiency of proof, or the errors in the evidence before the grand jury.

■ Second, we have held that the use of "informal immunity,"[13] which has been frequently upheld, is entirely proper. *See United States v. Anderson*, 778 F.2d 602, 606 (10th Cir.1985) (and cases cited therein). Moreover, the defendants have failed to show how the use of informal immunity prejudiced the grand jury. *See, e.g., id.* at 606.

■ Third, the district court's findings of post-indictment violations of *Massiah* could not possibly have affected the grand jury's charging decision. Thus the use of such violations to justify dismissal was incorrect.

■ The remaining findings have somewhat more force but are insufficient to warrant dismissal of the indictment. The district court found systematic violations of Rule 6(d), causing prejudice to the defendants. 594 F.Supp. at 1353. After review of the district court opinions, the records of the hearings, and the grand jury proceedings, we are not persuaded that the defendants were prejudiced by the readings of prior grand jury testimony by IRS agents to the subsequent grand jury. We do not condone unsupervised readings by IRS agents unattended by Government attorneys; however, we are unable to find any evidence in the record of infringement on the grand jury's ability to exercise its independent judgment.[14]

The district court further found systematic violations of Rule 6(e). The court found that the Government attorneys "relinquished to the IRS their responsibility to determine the persons to whom disclosure would be made." 594 F.Supp. at 1345. The court also found that the IRS agents

---

**11.** We do not hold that every defendant can attack an indictment alleging errors affecting only the probable cause determination by the grand jury after they successfully move for a new trial. That issue is not now before us. However, the peculiar facts of this case permit us to consider Kilpatrick's claims without prejudice to any party.

**12.** We note that no claim was made nor did the court find that the Government attorneys used perjured testimony, knowingly or unknowingly, before the grand jury.

**13.** " 'Informal immunity' is contrasted with 'statutory immunity,' which by statute requires the approval of a Senior Justice Department Official and of the district court judge. *See* 18 U.S.C. §§ 6002, 6003." *United States v. Anderson*, 778 F.2d 602, 606 n. 2 (10th Cir.1985).

**14.** We are unable to find an instance in the record where the IRS agents convened the grand jury sessions without Government attorneys being present. Thus, the district court's findings that the IRS agents may have convened the grand jury sessions is not supported by the record.

manipulated the grand jury to obtain materials to be used for civil litigation. *Id.* We do not find support for these findings.

The district court points to the extensive disclosure of grand jury materials to IRS civil employees as well as the haphazard and *post hoc* method of identifying those to whom disclosure was made as probative of Rule 6(e) violations. 594 F.Supp. at 1343–44. The court also cites as grounds for dismissal the "serious possibility" that IRS representatives improperly manipulated the grand jury to obtain materials for civil litigation purposes; the judge later found that the record "confirms that the grand jury's extraordinary powers and resources were, in part, initiated and channeled for just such a purpose." *Id.* at 1332 (footnote omitted). The court found also that the prosecutors showed a disregard for the secrecy provisions of Rule 6(e); that grand jury information had been disclosed in violation of Rule 6(e); and that a prosecutor had improper motives when he imposed unauthorized secrecy obligations on grand jury witnesses.

■ Rule 6(e)(3)(A)(ii) permits the Government attorney to make disclosure, without court order, of matters occurring before the grand jury to "such government personnel ... as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Fed.R.Crim.P. 6(e)(3)(A)(ii). The defendants point to portions of the record showing that disclosure of grand jury information was made to unknown numbers of civil IRS personnel who indexed all the subpoenaed grand jury documents. The computer indexing was done at Lowry Air Force Base in Colorado, in Ogden, Utah, and in Dallas, Texas. As to the latter two sites, there were no employees shown on the Rule 6(e) disclosure list. Assuming that this allegation finds

support in the record, we fail to see how the grand jury's independence was usurped in such a significant way as to amount to grand jury abuse. *See Pino,* 708 F.2d at 530.

Further, we do not see how the preparation of a catch-all disclosure list significantly infringed the grand jury's independence. We note that the investigation lasted twenty months and involved the efforts of two grand juries. Moreover, the grand juries were presented with a complex tax fraud case. The aid of IRS experts was essential to a complete understanding of the case. The fact that some of the IRS personnel assigned to the grand jury investigation were from the civil division is by itself not sufficient to show grand jury abuse. There is nothing in Rule 6 to keep the Department of Justice from having IRS civil agents assigned to a grand jury investigation. *See Sells Engineering,* 463 U.S. at 428, 103 S.Ct. at 3140; *see also Coson v. United States,* 533 F.2d 1119, 1121 (9th Cir.1976) (per curiam).

■ Federal employees assisting the prosecutor in the investigation and prosecution of federal criminal violations are permitted access to grand jury materials without prior court permission. However, such support personnel may not use the materials except for purposes of assisting Government attorneys to enforce federal criminal laws. *Sells Engineering,* 463 U.S. at 428, 442, 103 S.Ct. at 3140, 3147; *see also* 8 J. Moore, *supra* at ¶ 6.05.[4][a], at 6–119.[15] The Rule 6(e) proscription is on the use of the grand jury material and not on who obtains it. *Sells Engineering,* 463 U.S. at 428, 103 S.Ct. at 3140; *see United States v. Baggot,* 463 U.S. 476, 480, 103 S.Ct. 3164, 3167, 77 L.Ed.2d 785 (1983). Furthermore, the fact that the grand jury returned an extensive indictment is probative evidence that it was not abused to obtain evidence for civil purposes.[16]

---

**15.** *United States v. Doe,* —— U.S. ——, ——, ——, 107 S.Ct. 1656, 1659, 1663, 95 L.Ed.2d 94 (1987), illustrates permissible limited use, on a showing of particularized need, by disclosure to Government civil attorneys in the Department of Justice Civil Division and a United States Attorney's Office, of grand jury material for purposes of

consultation in deciding whether civil actions should be initiated.

**16.** Whether grand jury records can be used as evidence in future civil litigation can be properly decided on a timely motion to suppress in such a case. *See Witte v. United States (In re*

The court further found that fifteen letters prepared by the Government and mailed to the defendants' business associates identifying the subject and the targets of the investigation violated the secrecy obligations of Rule 6(e) and should lead to dismissal of the indictment. 594 F.Supp. at 1334–35. We fail to see how such a violation of Rule 6(e) should result in dismissal of the indictment. There is no support for a finding that the grand jury's independent judgment was infringed in any significant way. Moreover, the investigation by the IRS agents of numerous investors in the transactions in question here was proper even though the IRS agents limited the scope of the interviews by revealing the subject matter of the inquiry. Any misconduct was not so flagrant that the grand jury's independence was infringed.

Finally, we agree with the district court's finding that the prosecutor imposed unauthorized secrecy obligations on two witnesses before the grand jury. *Id.* at 1335–36. Although the admonition to the witnesses was contrary to the dictates of Rule 6(e)(2), no prejudice was shown in connection with the admonition, *see United States v. Radetsky,* 535 F.2d 556, 569 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976), and the admonition cannot serve as a basis for dismissal of the indictment.

The district court found that the use of the title "agents of the grand jury" by IRS agents mislead the grand jury.[17]

However "Fed.R.Crim.P. 6 contemplates the use of government agents, such as I.R.S. agents, to assist an attorney for the government in his handling of a grand jury investigation." *Anderson,* 778 F.2d at 605. We need not decide here whether the use of "grand jury agents" violated the Rule 6 prohibition against unauthorized presence or unauthorized disclosure.[18] There is no showing by the defendants as to how this record reveals any actual prejudice to them in the proceedings by overreaching the grand jury or usurping its independence through this conduct.

Moreover, we do not see how the invocation of Fifth Amendment rights by grand jury witnesses should lead to dismissal of the indictment. The record shows that once the privilege was invoked the Government attorneys ceased questioning. *See United States v. Thibadeau,* 671 F.2d 75, 78 (2d Cir.1982). "[T]he privilege accorded one called before a grand jury is the election to refuse to give testimony which might tend to show he had committed a crime. It is not designed to effect a prohibition against inquiry by an investigative body." *United States v. Cefalu,* 338 F.2d 582, 584 (7th Cir.1964). The fact that several witnesses planned to invoke their Fifth Amendment privilege if called before the grand jury cannot be transformed into a prohibition against inquiry. Once the privilege was invoked on the record, the prosecutors discontinued all questioning.[19]

Finally, the district court found that the prosecutor's mistreatment of a

*Grand Jury Subpoena of Fred R. Witte Center Glass No. 3),* 544 F.2d 1026, 1029 (9th Cir.1976).

17. At the beginning of work of the indicting grand jury on July 8, 1981, the prosecutor asked for Mr. Raybin to be sworn in as a Grand Jury agent, saying this meant it was "very, very clear" that when the agent looked at evidence it was not so much as an IRS agent but as the Grand Jury's agent. The oath administered at that time also referred to secrecy to be maintained concerning the evidence, subject to instructions by the Foreman or a federal judge. (G.J. Tr., Colloquoy, July 8, 1981, 9:11 A.M., at 2–3). Agent Mendrop was given a similar oath. (G.J. Tr., Colloquy, July 8, 1981, 12:14 P.M., at 2).

18. *Compare United States v. Jones,* 766 F.2d 994, 1001 (6th Cir.), *cert. denied,* —— U.S. ——, 106

S.Ct. 526, 88 L.Ed.2d 458 (1985) ("agent of grand jury" sworn by foreman at prosecutor's request not prosecutorial misconduct) *with United States v. Claiborne,* 765 F.2d 784, 794 (9th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986) (use of "grand jury agents" not proper).

19. During the grand jury investigation, one juror indicated that the grand jury might consider the fact that a witness asserted the Fifth Amendment privilege against self-incrimination. (G.J. Tr., Colloquy, May 3, 1982, 9:15 A.M., at 7.) A prosecutor promptly cautioned the grand jury that it was not to consider the assertion of the privilege.

witness favorable to the defense prejudiced the defendants. 594 F.Supp. at 1343. We find the mistreatment of the witness, an expert on tax matters, unjustifiable. The mistreatment occurred during a recess but within the hearing of several grand jurors, witnesses, and attorneys. The district court's opinion, however, focuses entirely on the conduct of the prosecutor and not on any resulting prejudice to the defendants. We conclude that the defendants have failed to show how the grand jury's independence was breached. The defendants are hard put to argue that this incident in the course of a twenty-month investigation threatened the grand jury's independence. *See Pino,* 708 F.2d at 530.

There is a presumption of regularity that attaches to grand jury proceedings. *Hamling v. United States,* 418 U.S. 87, 139 n. 23, 94 S.Ct. 2887, 2918 n. 23, 41 L.Ed.2d 590 (1974). Here the defendants failed to sustain their burden of overcoming the presumption. The grand jury transcripts show an active, independent, and questioning grand jury, familiar with the record, one that thoughtfully questioned, rather than submitted to statements and suggestions of the Government attorneys.[20] The

district court erred in focusing primarily on the propriety of the Government's conduct rather than on possible interference with the integrity and independence of the grand jury. "Dismissal of an indictment returned after deliberation by a grand jury is a very drastic action." *Anderson,* 778 F.2d at 606. It can only be warranted when the misconduct complained of significantly infringes "on the grand jury's ability to exercise independent judgment." *Pino,* 708 F.2d at 530.

We conclude that the totality of conduct before the grand jury did not warrant dismissal of the indictment. The accumulation of misconduct by the Government attorneys did not significantly infringe "on the grand jury's ability to exercise independent judgment." *Pino,* 708 F.2d at 530. Accordingly we hold that the district court erred in its conclusions that the grand jury's function was usurped and that the indictment was tainted with illegality, 594 F.Supp. at 1349, 1352, following the *de novo* review we feel we should conduct. *See* Part II–B, *supra.* We are also persuaded that if those determinations are ul-

**20.** It is evident from the grand jury transcripts that the prosecutors frequently reminded the grand jury of its independence and duty to make its own assessment of the evidence introduced before it. A prosecutor specifically advised the grand jury that "these men are entitled to a fair and impartial deliberation by the Grand Jury." (G.J. Tr., Colloquy, Aug. 5, 1981, 4:11 P.M., at 4). The prosecutor further stated to the grand jury:

> Once again, at any time you have a question, by all means, either ask me or ask my agents. I'll try to clarify it. Like I told you the first day, don't be satisfied with what we tell you. Push us. Make sure that the documents are there and the evidence is there and the testimony is there. If you don't think it is there, tell me and if I can't get it better to you, to your satisfaction, then I'm failing my duty.

(G.J. Tr., Colloquy, Sept. 9, 1981, 10:15 A.M., at 2).

Furthermore, just before the prosecutors asked the grand jury to return an indictment they reiterated the roles of the Executive Branch and the grand jury:

> Mr. Blondin and I are advocates, and we are paid advocates. Thus, you should remem-

ber that Mr. Blondin and I are just that: advocates. And what we have said to you in the past and will say to you today is that of an advocate, and you should consider what we say only in the light of what we say makes sense: is it logical? is it rational? is it based on evidence? If it is, then you should consider the argument; if you reject it and find it is weak at some point, then reject it.

(G.J. Tr., Colloquy, Sept. 30, 1982, 9:07 A.M., at 5).

The grand jury transcripts portray an active and questioning grand jury. During the investigation the grand jury vigorously questioned the prosecutors (*see, e.g.,* G.J. Tr., Colloquy, July 8, 1981, 8:39 A.M., at 9, 12, 13, 17; G.J. Tr., Colloquy, Aug. 5, 1981, 4:11 P.M., at 2–4) and the IRS agents (*see, e.g.,* G.J. Tr., Raybin, July 8, 1981, 9:11 A.M., at 13–14, 16–23, 33; G.J. Tr., Mendrop, Aug. 5, 1981, 4:04 P.M., at 3–7; G.J. Tr., Mendrop, Sept. 29, 1982, 9:32 A.M., at 14–15, 20–22, 25, 43–44, 47–49, 54; G.J. Tr., Raybin, Sept. 29, 1982, 2:32 P.M., at 20–21). Moreover, one juror questioned whether the evidence presented was sufficient to charge one of the defendants, the secretary Ms. Lerner, and vigorously interrogated the prosecutor on that point. (G.J. Tr., Sept. 29, 1982, 8:52 A.M., at 5–11).

timate fact-findings, they are clearly erroneous in light of the record.[21]

As stated, we conclude that the accumulation of misconduct by the Government attorneys did not significantly infringe on the grand jury's ability to exercise independent judgment. Without such infringement, the drastic remedy of dismissal of the indictment is unwarranted. We cannot agree that the remedy can be used without such a showing on the theory of exercise of supervisory powers, as the dissent concludes. Our decisions do not support such a view, and those of the Supreme Court

have not established a different rule. In *Anderson* the opinion of Judge Kane is clear that his dismissal was based on an exercise of supervisory powers. 577 F.Supp. 223, 232–33 (D.Colo.1983) ("It is well within a district court's supervisory powers to insure that the grand jury's integrity as an independent body is not destroyed in the public eye"), and the Judge concluded that the Government conduct there significantly impaired the grand jury's ability to exercise independent judgment. *Id.* at 234. We reversed, concluding that the grand jury's independence was not

---

**21.** We have earlier explained our reasons for concluding that no showing justifying dismissal of the indictment was made in connection with the calling of witnesses who asserted their protection against self-incrimination. We quote below the colloquy cited by the dissent which shows the discussion and some reasons for calling the witnesses:

JUROR: I want to ask you a question. I know that we are not supposed to think anything when they take the Fifth Amendment; being human, we do.

MR. BLONDIN: Strike that out of your mind. You cannot assume—

JUROR: Can you speculate on why he wouldn't answer for us?

MR. BLONDIN: There are various reasons, and I can't speculate for you.

He has a right, especially since he is a target of the investigation, the right not to answer any questions a truthful answer to which may tend to incriminate him.

Now, I cannot speculate nor can the Grand Jurors, anybody in the room, speculate as to the reason why. You, as well as Mr. Pettingill, have that privilege; you can assert it for any reason: on advise of counsel, your own reasons, maybe your aunt or somebody else gave you advice on it. We are not going to speculate on it; and get rid of it, it has nothing whatsoever to do with your deliberations.

We cannot even begin to think of reasons for that. There could be some very legitimate reasons for him to assert the Fifth Amendment. Just the specter of a Grand Jury investigation—

JUROR: I'm sure that's easy for you and for us because we—

MR. BLONDIN: There are two options on what we can do when a witness takes the Fifth. All right, take it up—compel his testimony or her testimony, go to the Judge; the Judge says, "That's not privileged, you don't have a Fifth Amendment privilege, you testify. Give us answers."

At that point the witness says, "No, I am not going to testify." Then we go to court again, hold him in contempt; and it doesn't end there. There is an elaborate appellate procedure that we have to go through to get the issue resolved

before we can get answers to questions that we propound before the Grand Jury.

The other option, we can give a witness immunity; and once he is granted immunity, we can compel him to testify, and he has no privilege.

Targets of the investigation, no immunity.

JUROR: I got a question for you. You asked him who all had the right, I guess, to see these files, to obtain these files; he pleaded the Fifth. How can that be incriminating to him?

MR. BLONDIN: There may be other people that have access to them, that we don't know about. He may not have known the answer and just took the Fifth. He, in this case, may have taken the Fifth on advise of counsel. That gets into speculation, and I can't. The questions I asked of him—and I was going to go in a more—go through it piece by piece, but I could see there is no way we could do that. All right. I tried to shortcut, just laid the foundation that these were business records, they were authentic business records that could be admissible.

The problem we had in the hearing before Judge Carrigan on the foreign corporations compelling production of those records was that there was objection made by defense counsel as to the admissibility of certain corporate records. We had subpoenaed Mr. O'Donnell and Mr. Kilpatrick, and we had asked their counsel to provide a custodian of records, somebody that could identify that these were business records.

They provided a witness that they assured us could identify the records, that would say they were corporate—a corporation does not have a Fifth Amendment privilege. All right. There are a number of Supreme Court cases that have resolved that issue, that a corporation has to provide a custodian to identify the records, and that's part of our foundation that the government or the prosecutor had to lay before the records could come in as evidence in a trial.

They objected to it. As a consequence of that we said, "All right, we are calling people in, and they are going to identify these business records." And that's why we have to go through this.

(G.J. Tr., Colloquy, Jan. 5, 1982, 9:09 A.M., at 22–25).

shown to have been infringed, citing *Pino. Anderson,* 778 F.2d at 604, 605, 606. Our *Pino* opinion, quoted by the dissent, is arguably unclear on the point. *Pino* does discuss the exercise of supervisory powers in a statement separate from that on infringement of the grand jury's judgment. However the full discussion in the opinion shows no holding that a dismissal is justified without "some significant infringement on the grand jury's ability to exercise independent judgment." *Pino,* 708 F.2d at 530 (citations omitted). That requirement is stated immediately following citations and a statement that "dismissal may be based on the Fifth Amendment Due Process Clause or upon the court's inherent supervisory powers." *Id.* In any event, *Anderson* makes clear the requirement of infringement of the grand jury's independence.

We do not read the Supreme Court's opinions as opening the door to dismissals on supervisory power notions without a showing of infringement on the grand jury's functions in cases like this. *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), relied on by the dissent, did say that it was unnecessary to reach the constitutional issue and reversed as an exercise of judicial supervision over the administration of criminal justice, "establishing and maintaining civilized standards of procedure and evidence." *Id.* at 340, 63 S.Ct. at 613. While this was the stated basis for the reversal, the opinion in no way suggests that such a ruling should be made without regard to the harmless error rule. *See* Fed.R.Crim.P. 52. *Young v. United States,* —— U.S. ——, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), also furnishes no basis for a conclusion that the Court favors an exercise of supervisory powers to dismiss indictments without regard for whether the grand jury's functions were infringed. The plurality opinion (Brennan, Marshall, Blackmun and Stevens, JJ.), held that society's interest in disinterested prosecution would not adequately be protected by harmless error analysis, but there was no majority opinion expressing that view in the circumstances of that case. Moreover *Young* involved special circumstances where appointment of private counsel, having professional obligations to his client, for prosecution of a criminal contempt proceeding raised special conflicts problems of an unusual nature.

 We remain convinced that the drastic remedy of dismissal of an indictment, whether premised on due process or supervisory powers theories, cannot be exercised without a significant infringement on the grand jury's ability to exercise independent judgment.[22] We are instructed clearly in *United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983), to ignore errors that are harmless, including most constitutional violations.[23] Finally, *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973), reversed a dismissal, cautioning against a "chancellor's foot" veto over law enforcement practices of which a court disapproves.

### III.

The judgment of the district court dismissing the indictment is reversed and the cases are remanded with directions to reinstate all counts of the indictment.

---

**22.** *Accord United States v. De Rosa,* 783 F.2d 1401, 1406–07 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986) (defendant must show prejudice before court will dismiss indictment on either the constitutional or supervisory grounds); *United States v. Griffith,* 756 F.2d 1244, 1249 (6th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985) (same); *United States v. McKenzie,* 678 F.2d 629, 631 (5th Cir.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982) (same). *Contra United States v. Rosenfield,* 780 F.2d 10, 11 (3d Cir.1985) (per curiam) *cert. denied,* —— U.S.

——, 106 S.Ct. 3294, 92 L.Ed.2d 709 (1986) (no prejudice required).

**23.** The Court pointed out that deterrence is an inappropriate basis for reversal where an attenuated violation is involved "and where means more narrowly tailored to deter objectionable prosecutorial conduct are available." 461 U.S. at 506, 103 S.Ct. at 1979. And the Court referred specifically to such a less drastic remedy where a Government attorney made improper arguments to a grand jury. *Id.* at 506 n. 5, 103 S.Ct. at 1979 n. 5.

SEYMOUR, Circuit Judge, dissenting.

I respectfully dissent from the view of the majority that prejudice to the defendant must be shown before a court can exercise its supervisory powers to dismiss an indictment on the basis of egregious prosecutorial misconduct. I would affirm.

It is beyond argument that the Government's conduct in this case was outrageous. As set out in two district court opinions, *United States v. Kilpatrick*, 594 F.Supp. 1324 (D.Colo.1984), and *United States v. Kilpatrick*, 575 F.Supp. 325 (D.Colo.1983), the record contains evidence constituting a laundry list of serious improprieties, most of which the majority neither disputes nor condones. Government officials repeatedly violated Fed.R.Crim.P. 6(d) by presenting two witnesses to the grand jury at the same time. *See* maj. op. at 1467–68, 1470. The Government routinely flouted the secrecy provisions of Fed.R. Crim.P. 6(e). First, it improperly used grand jury information in civil tax audits of taxpayers who invested in the tax shelters at issue, *see* maj. op. at 1471; second, it improperly disclosed the identity of the grand jury targets to people who were not grand jury witnesses but with whom the targets had business and professional relationships, *see id.* at 1472; and third, it improperly swore to secrecy two grand jury witnesses who had formerly represented the targets in S.E.C. proceedings involving the same tax shelters, *see id.* at 1472. During a recess a Government attorney mistreated a tax expert, who had testified before the grand jury favorably to the targets, by shouting insults at and intimidating him in the presence of grand jurors, other witnesses, and attorneys.[1] *See id.* at 1472–73.

In addition, the Government attorney paraded seven witnesses before the grand jury knowing that they would invoke their Fifth Amendment privilege to refuse to answer any questions. I cannot agree with the majority's conclusion in footnote 19 that any prejudice arising from this presentation to the grand jury was eliminated by the prosecutor's admonition. The grand jurors had previously questioned the prosecutors on the use of the privilege, displayed frustration over its invocation, and discussed pursuing the matter with the district court to test the privilege. *See* rec., Remarks to grand jury, Jan. 5, 1982, at 22–29. Significantly, one grand juror stated: "I know that we are not supposed to think anything when they take the Fifth Amendment; being human, we do." *Id* at 22. In view of this candid admission, the potential for prejudice arising from seven witnesses' refusal for fear of incrimination to discuss their involvement in the very matters upon which the grand jury was asked to indict cannot be denied. *Cf. United States v. Coppola*, 479 F.2d 1153, 1160 (10th Cir.1973) (condemning conscious effort by Government to derive evidentiary value from adverse inference arising from invoking the privilege). Consequently, this court has held that it is improper for the Government to call a witness knowing that he will assert his Fifth Amendment privilege. *See id.; see also United States v. Crawford*, 707 F.2d 447, 449 (10th Cir. 1983).

After numerous hearings before two trial judges, both judges found that the Government's pervasive misconduct evinced a deliberate and alarming disregard of standards imposed by the Federal Rules, Justice Department guidelines, ethical considerations, and civilized behavior.

> "The numerous abuses and violations of rules and constitutional principles must be considered particularly serious because of the admissions in these hearings that, for the most part, the activity was undertaken knowingly and purposefully."

*Kilpatrick*, 594 F.Supp. at 1352. Based on its finding that the Government's conduct

---

1. The district court also found that the special agents who summarized the evidence against defendant Bank of Nova Scotia mischaracterized this evidence. *See Kilpatrick*, 594 F.Supp. at 1339–40. Although I agree with the majority that the agent's use of hearsay was not improper per se, *see* maj. op. at 1470, the majority does not address the serious allegation that the hearsay itself was inaccurate and misleading.

was intentional, which includes credibility assessments this court may not lightly disregard, the district court found that "the substantial departures of prosecutors in this case from established notions of fairness, from clearly articulated rules of law, from specific rules of procedure and, indeed from the Department of Justice's own manual and operating directives constitute systematic and pervasive overreaching." *Id.* The court concluded that the cumulative effect of the Government's conduct prevented the grand jury from undertaking independent action. *Id.* at 1353.

Although acknowledging most of the improprieties set out in the lower court opinions, the majority does not agree with the district court that the Government's actions impaired the grand jury's ability to exercise its independent judgment, which is the standard that must be met before the indictment may be dismissed under the Fifth Amendment. Significantly, the majority also concludes that the sanction of dismissing the indictment is not a proper exercise of a district court's supervisory power unless the same standard is met, that is, unless there is a legally sufficient showing that the Government's misconduct adversely affected the grand jury's independence. Putting aside whether the impact of the Government prosecutors' behavior on the decision-making process of this grand jury can realistically be evaluated, I do not believe that such a showing is a prerequisite to the pre-trial dismissal of an indictment under a court's supervisory power.

In *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), the Supreme Court did not employ a harmless error analysis in considering whether the invocation of its supervisory power was appropriate. To the contrary, the Court found it unnecessary to determine whether the defendants had been prejudiced by a constitutional violation before exercising its supervisory powers to reverse a conviction. In so doing, Justice Frankfurter said for the Court:

"In the view we take of the case, however, it becomes unnecessary to reach the Constitutional issue pressed upon us. For, while the power of this Court to undo convictions in state courts is limited to the enforcement of those 'fundamental principles of liberty and juctice; *Hebert v. Louisiana,* 272 U.S. 312, 316 [47 S.Ct. 103, 104, 71 L.Ed. 270 (1926)], which are secured by the Fourteenth Amendment, the scope of our reviewing power over convictions brought here from the federal courts is not confined to ascertainment of Constitutional validity. Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force."

*Id.* at 340, 63 S.Ct. at 613.

In a recent consideration of supervisory powers, the Court set out the three purposes underlying their use: 1) to remedy the violation of recognized rights; 2) to preserve the integrity of the judicial process; and 3) to deter illegal conduct. *See United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). The Court pointed out that securing these objectives by the exercise of supervisory power may frustrate the societal concern for the conservation of judicial resources and the prompt administration of justice embodied in the harmless error rule. *See id.* at 509, 103 S.Ct. at 1980. The Court held that a court contemplating the exercise of its supervisory power must weigh the benefits to be obtained against the cost to the countervailing interest in finality. *See id.* at 506–07, 103 S.Ct. at 1979. The weight to be given the harmlessness of the error obviously increases in significance when the balancing is done after trial and conviction.[2] Implicit in the

2. Although *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), did not address the exercise of supervisory power, the

Supreme Court's decision to reverse the automatic dismissal of an indictment for a Rule 6(d) violation was premised upon the importance the

Court's guidance on this issue is its recognition that although the harmlessness of the alleged misconduct is an element to be balanced against the desired result, it is *not* always dispositive. If the exercise of supervisory power were per se precluded by a finding of lack of prejudice, a balancing process would never be necessary.

Our opinion in *United States v. Pino*, 708 F.2d 523 (10th Cir.1983), was filed only three days after *Hasting* and does not cite that decision. Moreover, I cannot agree with the majority's reading of *Pino* to establish that prosecutorial misconduct must be shown to have affected the grand jury's independence before supervisory power can be invoked, particularly in a pretrial setting. In *Pino*, the defendant contended that the prosecutor's behavior *had* unfairly infringed on the grand jury's independent judgment. The district court found no effect, and the defendant appealed after his conviction. This court pointed out that dismissal of an indictment may be based either on the Fifth Amendment Due Process Clause or the court's inherent supervisory powers. *See id.* at 530. We distinguished between those two inquiries, however, stating:

"We are not persuaded that the circumstances as a whole show such flagrant misconduct that the grand jury was overreached or deceived in some significant way, or that the prosecutor's conduct significantly infringed on the ability of the grand jury to exercise its independent judgment. *We are also not convinced that the circumstances here justify exercise of the court's supervisory power to protect the integrity of the judicial process by dismissing the indictment.*"

Court placed upon finality when an indictment is dismissed for a technical, harmless error *after* trial. *See id.* 106 S.Ct. at 942–43.

**3.** I cannot agree with the majority that our opinion in *Anderson* makes clear the requirement of prejudice. The district court opinion in *Anderson* refers to the denial of due process as a basis for its decision to dismiss the indictment, both by its own discussion of the constitutional function of the grand jury and by its references to the discussion of that constitutional function in *United States v. Dionisio*, 410 U.S. 1, 16–17, 93 S.Ct. 764, 772–73, 35 L.Ed.2d 67 (1973). *See*

*Id.* at 531 (citation omitted) (emphasis added). Our separation of these distinct bases for dismissing an indictment indicates that *Pino* should not be read to hold that the finding of prejudice needed to support a dismissal on due process grounds is also required when supervisory powers are invoked.

Our subsequent cases citing *Pino* to require a showing of prejudice simply do not indicate which basis for dismissing the indictment was at issue. *See United States v. Page*, 808 F.2d 723, 726 (10th Cir.1987); *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir.1986); *United States v. Anderson*, 778 F.2d 602, 604–05, 606 (10th Cir.1985).[3] It is also important to emphasize that, contrary to the present case, *Hasting, Pino, Page*, and *Buchanan* are all cases in which the argument to dismiss the indictment was made after conviction, a time at which the interest in finality is very substantial and the harmlessness of the error is therefore weighted heavily.[4] Moreover, we said in *Page:*

"This clearly is not a case involving abuse, bad faith, or vindictiveness. Instead the prosecutor's failure to correct Agent West's testimony was, at worst, an oversight. The extraordinary remedy of dismissal of the indictment is not called for here."

808 F.2d at 727.

In sum, I am convinced that neither the Supreme Court in *Hasting* nor our opinions in *Pino* and its progeny establish that a court is barred from exercising its supervisory powers to dismiss an indictment *prior to trial* absent a showing that the misconduct affected the grand jury's charging

*United States v. Anderson*, 577 F.Supp. 223, 230–32 (D.Wyo.1983). Our opinion in *Anderson*, which does not refer to the exercise of supervisory powers, concludes only that "the record in the instant case does not support the conclusions of the trial court which formed the basis for the dismissal." 778 F.2d at 606.

**4.** Although in *Anderson* this court did reverse a dismissal granted prior to trial, we held that, contrary to the conclusion here, none of the challenged conduct was improper.

decision. Such a requirement would render a court's supervisory power superfluous because misconduct that does affect the grand jury's independence is a constitutional violation remediable under the Fifth Amendment.

The circuits are split on the need to show prejudice. *See United States v. Holloway*, 778 F.2d 653, 658–59 (11th Cir.1985) (noting authority on both sides of issue), *cert. denied*, —— U.S. ——, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). The Third Circuit has specifically rejected the prejudice requirement when there is "evidence that the challenged activity was something other than an isolated incident unmotivated by sinister ends or that the type of misconduct challenged has become 'entrenched and flagrant' in the circuit." *United States v. Rosenfield*, 780 F.2d 10, 11 (3rd Cir.1985) (per curiam) (quoting *United States v. Serubo*, 604 F.2d 807, 817 (3rd Cir.1979)), *cert. denied*, —— U.S. ——, 106 S.Ct. 3294, 92 L.Ed.2d 709 (1986). *Contra United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985); *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir.), *cert denied*, 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982). This standard comports with the Supreme Court's indication that a showing of prejudice is not required when the record reveals "a pattern of recurring violations." *United States v. Morrison*, 449 U.S. 361, 366 n. 2, 101 S.Ct. 665, 668 n. 2, 66 L.Ed.2d 564 (1981). Further, such a test is not inconsistent with *Hasting* and our circuit opinions, and is particularly appropriate when, as here, a dismissal is granted prior to trial.[5]

Although I recognize that supervisory powers should be exercised sparingly, I would apply the Third Circuit criteria in this case and uphold the district court's dismissal. After an evidentiary hearing, the district court here found that the ongoing misconduct, which pervaded the investigation of the case and its presentation to the grand jury, was motivated by bad faith and "improper strategic purpose[s]". *See,*

*e.g., Kilpatrick*, 594 F.Supp. at 1335, 1338. The evidence clearly supports this credibility determination. The record of the Government's conduct evinces a determination to circumvent or simply ignore the standards governing grand jury proceedings when to do so would enhance the presentation of its case. Under these circumstances, the district court was within its discretion in exercising its supervisory power to protect the integrity of the judicial process and to deter illegal conduct, *see Hasting*, 461 U.S. at 505, 103 S.Ct. at 1978, particularly when the interest in finality had not been supported by a conviction.

Finally, it is important to point out that the exercise of supervisory power in this case does not violate the separation of powers by encroaching on the prosecutor's authority. A prosecutor may not invoke separation of powers to avoid the consequences of his intentional disregard of *judicial standards* specifically directed toward his conduct. The Supreme Court recently held that a court may exercise its supervisory authority to appoint a special prosecutor notwithstanding the argument that to do so would usurp the prosecutor's function. *See Young v. United States*, —— U.S. ——, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). "The exercise of supervisory authority is especially appropriate in the determination of the procedures to be employed by courts to enforce their orders, a subject that directly concerns the functioning of the judiciary." *Id.* at ——–——, 107 S.Ct. at 2138. This holding is equally applicable when, as here, a court exercises its supervisory authority to enforce the Criminal Rules, which are also directly concerned with the functioning of the judicial process.

I conclude that a finding of prejudice to the defendant should not be required to dismiss an indictment when prosecutorial misconduct during the grand jury proceedings is pervasive. Prejudice to the integrity of the judicial process should be sufficient. Because the lower court's exercise of its supervisory power is supported by

---

**5.** As the majority recognizes, Kilpatrick is in essentially the same position as a pretrial defendant because he was granted a new trial. *See* maj. op. at 1470.

the facts and the law, I would affirm the dismissal of the indictment.